Argued and submitted January 3, 2013, reversed and remanded for reconsideration October 8, 2014, petition for review denied February 5, 2015 (356 Or 690)

Rachel M. WELDON, LPC,
*Petitioner,*

*v.*

BOARD OF LICENSED PROFESSIONAL
COUNSELORS AND THERAPISTS,
*Respondent.*

Board of Licensed Professional Counselors and Therapists
2009026; A151028

337 P3d 911

Michael B. Mendelson argued the cause and filed the brief for petitioner.

Denise G. Fjordbeck, Attorney-in-Charge, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

ARMSTRONG, P. J.

## ARMSTRONG, P. J.

Petitioner seeks judicial review of a final order of the Board of Licensed Professional Counselors and Therapists (the board) suspending her professional counseling license for two years and imposing other sanctions in connection with her counseling of a 10-year-old child (child). Petitioner contends that the board erred in rejecting a proposed order by an administrative law judge (ALJ)—which had concluded that petitioner's license should *not* be suspended and that she should *not* be subject to any discipline—because the board (1) modified historical findings of fact made by the ALJ without determining that there was clear and convincing evidence that the findings were wrong, as required by ORS 183.650(3); (2) violated ORS 183.650(3) by deleting certain findings of fact made the by ALJ; (3) failed to comply with ORS 183.650(2) when it modified the form of the ALJ's proposed order in a substantial way; and (4) made credibility findings "without complying with either ORS 183.650(2) or ORS 183.650(3)."[1] As explained below, we reject all of petitioner's assignments of error, with one exception: We agree with petitioner that the board erred in deleting one of the ALJ's findings of fact—finding of fact number 37—and we reverse and remand for the board to reconsider the violations that were based on the board's modification of that finding and to reassess the sanctions that the board imposed.

We describe the factual background of the case based, except as otherwise noted, on historical facts that are undisputed—that is, on facts that were found both by the ALJ and the board. We discuss some additional facts in connection with our analyses of petitioner's assignments of error; however, a complete recitation of the allegations against petitioner and of the evidence presented at the contested case hearing is unnecessary to our resolution of the case and would be of little benefit to the bench, the bar, or the public.

Petitioner has been licensed by the board as a licensed professional counselor (LPC) since 2006. She has a master's degree in counseling psychology and has "worked in

---

[1] The pertinent subsections of ORS 183.650 are set out below. 266 Or App at 61, 69).

the counseling field since 1999." At the time of the events at issue, she was affiliated with Mosaic Counseling Associates (Mosaic), a counseling service that provides facilities and clerical and support services for seven to eight counselors and therapists who operate their own individual practices. Mosaic is owned by Cleary, a licensed clinical social worker, and Donaldson, an LPC.

In early summer 2008, child's parents[2] arranged to have child—then 10 years old—receive counseling with petitioner because they believed child was having social difficulties with other students at her school. Mother brought child to counseling sessions with petitioner and waited outside petitioner's office during the sessions. At the third session, child began to reveal instances in which child's 11-year-old brother (sibling), in the words of the ALJ and the board, had "physically abused" and "verbally berated" her. Because child told petitioner that her parents did not believe her when she told them what sibling was doing, petitioner suggested that child keep a journal so that petitioner could better explain to parents what was happening. At the fourth session, child brought her journal, in which she had written comments such as, "[sibling] kicks me," "[he] slaps me in the face," "[he] makes fun of me," "[he] hurts me, and when I tell mom and dad, they ignore me." She also reported that "[sibling] pushes me away," "excludes me," and "[t]ells me to [s]hut up." At the fifth session, child reported further instances of abuse; after that session and in front of child, petitioner made an appointment with mother for her to bring father and child for a meeting on August 8. She did not tell mother the purpose of the meeting.

Parents and child missed the August 8 appointment, and it was rescheduled for August 21. Father, mother, child, and sibling appeared for that appointment; it was the first time that petitioner had seen father or sibling. Petitioner explained to parents her legal obligation to report abuse to state authorities. Petitioner testified, and the ALJ found, that petitioner also explained that she "hoped as parents they could take steps to stop the abuse before it reached

---

[2] We refer to child's parents individually as "mother" or "father" and, collectively, as "parents."

the level that would require mandatory reporting by her." The board, on the other hand, found, based on mother's and father's testimony, that petitioner told parents at the meeting that, "if they continued counseling with [her,] she would not report the abuse." Petitioner became teary-eyed during the meeting.

Child had two more counseling sessions with petitioner after that, on August 25 and September 15, during which child acted happy and did not report any instances of abuse by sibling. On September 29, father telephoned petitioner and cancelled the appointment scheduled for that day, telling petitioner that he believed the family meeting on August 21 had "gone badly." Petitioner asked father if he planned to continue child's counseling; father said that he would talk with mother about it.

Immediately after the telephone call with father, petitioner conferred with Donaldson about what she should do. She then phoned child's school to see if child had reported any abuse to school authorities; the school counselor with whom petitioner spoke was not aware of any. Petitioner then telephoned the Department of Human Services (DHS) and made a report.[3] DHS treated the investigation as one of physical abuse by sibling against child, and, after interviewing child, sibling, mother, and father that same day, concluded that there was no abuse and labeled the report of abuse as "'unfounded.'"

Parents subsequently made two written requests for child's file. After the first, petitioner conferred with Cleary and Donaldson, then responded with a letter, explaining that, because the file had resulted in a report to DHS, she did not believe it to be in child's best interest to release the file to parents. It is disputed whether petitioner also conferred with Ecklund, the board's executive director; that issue is discussed in detail in connection with petitioner's second assignment of error. *See* 266 Or App at 64-67.

---

[3] The board found that petitioner reported "[s]ibling's abuse of [c]hild"; the ALJ found that petitioner reported "neglect, based on her concern that the parents were not taking seriously the possibility of abuse resuming against [c]hild by [s]ibling, and that the parents would not follow through with [c]hild's counseling or family counseling like they had agreed to do."

In response to parents' second request, petitioner sent them another letter, explaining that "she did not believe it was in [c]hild's best interest to release the file directly to them, but that she would release the file to another counselor or therapist." She explained that "in her opinion she had discretion under Oregon law and HIPAA [(the federal Health Insurance Portability and Accountability Act)] regulations to withhold the file from the parents in the best interest of [c]hild because she had reported the matter to DHS." Parents then conferred with Dr. Sabin, a pediatric physician whose practice focuses on the assessment and treatment of children with mental health issues. Sabin obtained a release from parents and requested and obtained child's file from petitioner.

In December 2009, the board issued to petitioner a "Notice of Intent to Impose Discipline and Right to Request Hearing" based on the above-described conduct. As summarized by the ALJ and the board,

> "[t]he Notice accused [petitioner] of violating *former* ORS 675.745(1)(c) and (d) [(2007)][4] and the Board's Code of Ethics (*former* OAR chapter 833, Division 60 [(12/26/2008)][5]), by failing to act in accordance with the highest standards

---

[4] ORS 675.745 was amended in 2009, *see* Or Laws 2009, ch 756, § 17; Or Laws 2009, ch 549, § 8; however, the proceedings in this case were conducted under the 2007 version of the statute (described in the ALJ's and the board's orders as a "*former*" statute). Although the text of the provisions applicable in this case was not changed, the amendment to subsection (1) resulted in the renumbering of paragraphs, so that paragraphs (c) and (d) are now paragraphs (d) and (e). To be consistent with the prior orders, we also refer to the 2007 version of ORS 675.745. That version provides, as relevant:

"(1) The Oregon Board of Licensed Professional Counselors and Therapists may deny, suspend, revoke or refuse to issue or to renew any license issued under ORS 675.715 to 675.835 upon proof that the applicant for licensure or the licensee:

"* * * * *

"(c) Has been grossly negligent in the practice of professional counseling or marriage and family therapy;

"(d) Has violated one or more of the rules of the board pertaining to the licensure of professional counselors or licensed marriage and family therapists[.]"

[5] The board's Code of Ethics was renumbered and is now in division 100 of OAR chapter 833. Although the relevant text is the same, we, like the ALJ and the board, refer to the former version of the rules, which are applicable in this case.

of professional integrity and competence; by failing to recuse herself from providing services to a child when her objectivity, fairness and effectiveness became impaired; by ignoring her professional responsibility to her client; by failing to take care to do no harm to the child; by continuing her counseling relationship with the child to further her financial interest; by failing to provide the child's parents with requested counseling records; and by engaging in gross negligence as a result of the same alleged violations. The Notice also sought from [petitioner] recovery of costs associated with the disciplinary proceeding."

A contested case hearing was held before an ALJ from the Office of Administrative Hearings (OAH) on December 22 and 23, 2010. Petitioner, mother, and father testified at the hearing, as did Sabin, Dr. Johnson (a clinical psychologist called by petitioner), petitioner's colleagues, Cleary and Donaldson, and Ecklund, the board's Executive Director.

After the hearing, the ALJ issued a 26-page proposed order, in which it made 50 separately numbered findings of fact and, based on those findings, concluded that petitioner had not violated ORS 675.745(1)(c) or (d) or the ethical rules, as alleged by the board. The ALJ did not make any general witness credibility findings but did find that petitioner had testified credibly as to three specific facts (*see* 266 Or App at 57 n 15). The ALJ's proposed order recommended that no disciplinary action be taken against petitioner. The board issued an amended proposed order, petitioner filed exceptions, and the board eventually issued the amended final order that is the subject of this judicial review.

The board's amended final order differs dramatically from the ALJ's proposed order. First, the board "restate[d]" the issues before it because, in its view, "the Proposed Order did not adequately or specifically address each alleged violation by [petitioner]." It then made extensive credibility determinations, setting out approximately nine pages of findings as to the credibility and reliability of petitioner, father and mother, and Sabin. The board noted that "[t]he credibility and reliability of witnesses is pivotal to this case because of the material contradictions between [petitioner's] testimony and the testimony of [m]other and [f]ather."

As to petitioner, the board observed that the record "reveals numerous inconsistencies and inherent improbabilities as well as significant bias that raise serious questions about the reliability of her testimony," followed by 20 separately numbered paragraphs, covering four single-spaced pages, describing what it considered to be those inconsistencies and demonstrations of bias. Much of that discussion focused on the fact that petitioner's clinical notes contradicted her hearing testimony that the reason that she had not reported the alleged abuse of child by sibling was because it was not "'reportable abuse.'" The board observed, for example, that petitioner's notes from the July 15 session indicated that she had explained to child that "'what [Child] was experiencing from [Sibling] was **abuse**, and would continue and get worse unless [Child's] parents stopped it.'" (Boldface and brackets in board's order.)

The board also found it significant that, although petitioner had testified that she had been very concerned about child's safety and her clinical notes indicate that she had told child that she had a duty to bring the abuse to parents' attention and make it stop, she "did not even attempt to set up a meeting with parents" until after her August 4, 2008, session with child, despite (again, according to petitioner's clinical notes), three sessions of child having reported episodes of abuse from sibling and despite the fact that mother was "right outside the door" during the sessions.[6]

In addition, the board rejected petitioner's testimony about her contact with DHS and highlighted inconsistencies in the record about whether the family was going to continue child in counseling. Petitioner testified that she had reported parental neglect to DHS, in part, because she was convinced that father was going to discontinue child's therapy. However, here again, the board found that petitioner's testimony was contradicted by her own notes as well as father's testimony, which demonstrated that the family was undecided whether to continue child's therapy.

---

[6] The board also found that petitioner had demonstrated bias in favor of child, noting, among other things, that petitioner "immediately began to interpret everything the parents said or did as pointing to abuse," "got emotional during the family meeting and cried," and "concluded that [s]ibling was abusing [c]hild after only one complete session with [c]hild, and without ever meeting [s]ibling or talking to the parents about [c]hild's relationship with [s]ibling."

The board summed up its findings as to petitioner's credibility as follows:

> "In many critical instances, [petitioner's] testimony is completely inconsistent with her own documentation in the [c]hild's records. Despite her repeated reference to physical and emotional abuse, it is only after a complaint is filed that [petitioner] attempts to distinguish the abuse she repeatedly recorded as 'unreportable' abuse. * * *
>
> "Based on the above, the [b]oard finds that [petitioner's] testimony at hearing was self-serving, biased, and unreliable *such that the [b]oard does not give it any weight when [petitioner's] testimony is either inconsistent with or contradicted by other evidence in the record.*"

(Emphasis added.)

On the other hand, the board found that father and mother were credible witnesses, detailing—again at some length—instances in which they had testified consistently with one another or with other evidence in the record. For example, the board found that parents' testimony was consistent about what had happened at the family meeting, including that petitioner had told them that "this was reportable abuse but if they continued therapy with her, [petitioner] would not have to report the abuse."

Finally, the board found, contrary to the ALJ's proposed order, that Sabin's expert testimony was more persuasive than Johnson's.[7] It noted that, unlike Johnson, who had been retained by petitioner "specifically to testify in this matter," Sabin had been retained by parents to address family concerns relating to their experience with [petitioner]"; thus, "her conclusions were not driven by a need to support or refute allegations of misconduct made against [petitioner]." The board reviewed Sabin's credentials, experience, and practice focus; it noted, among other things, that she has been treating child-abuse victims since the late

---

[7] The ALJ did not make any findings regarding the credibility of either doctor but opined that Johnson had given the more persuasive testimony because, among other things, Johnson's practice focused more on counseling individuals and families, whereas Sabin's focused on treating medical issues, including medication management; Johnson had talked with petitioner to explore her thinking and rationale for the decisions she made, which Sabin had not done; and Johnson provides training to LPCs on mandatory child-abuse-reporting requirements.

1970s and provides child-abuse-reporting training to attorneys through the Oregon State Bar. It also explained that the ALJ had misunderstood Sabin's practice as focusing on medical treatment, *see* 266 Or App at 59 n 7, noting that that notion was contradicted by Sabin's testimony that she specializes in counseling children.

The board modified the ALJ's proposed findings of fact consistently with its credibility determinations and its assessment of the expert testimony. Significantly, it deleted 15 of the ALJ's proposed findings (or portions thereof), identifying each of those findings by number and explaining:

> "The [b]oard, for the reasons stated above, finds by clear and convincing evidence that the testimony of [petitioner] is unreliable and gives no weight to such testimony and statements in all cases where [petitioner's] testimony was contradicted by or is inconsistent with other evidence in the record."

It also identified 37 additional findings of fact that it made "because the ALJ failed to fully and adequately set forth the material evidence in the record," and explained that it was disregarding three other findings (related to the parents' response to the abuse report) because they were "irrelevant and immaterial to the determination of whether [petitioner's] conduct was appropriate." The board incorporated those changes into its final findings of fact, which numbered 71 and included the findings (or portions thereof) made by the ALJ and not deleted by the board as described above.

Based on those findings of fact, as modified, the board concluded that petitioner had violated ORS 675.745(1)(d) and various provisions of *former* OAR chapter 833, division 60, when she (1) "failed to recuse herself from providing services to [c]hild when her objectivity, fairness and effectiveness became impaired"; (2) "failed to immediately report the suspected abuse of [c]hild to the appropriate authorities"; (3) "confronted [s]ibling, the suspected abuser, without discussing the allegations with the parents first"; (4) "confronted [s]ibling, the suspected abuser, in front of [c]hild"; (5) "used her counseling relationship with [c]hild to further [petitioner's] financial interests when [petitioner] told [c]hild's parents [that] she would not report the alleged abuse if the parents continued the [c]hild's counseling sessions

with [petitioner]"; and (6) "failed to provide [c]hild's parents with requested counseling records." It also concluded that petitioner "was grossly negligent when she violated *former* ORS 675.745(1)(c) and *former* OAR 833, Chapter 60 [*sic*], by engaging in the conduct [described above]." As a consequence for those violations, the board suspended petitioner's professional counseling license for two years, imposed other sanctions, and required her to pay the costs of the disciplinary proceeding. *See* ORS 675.745(6).

Petitioner seeks judicial review of the board's final order, contending, as noted above, that the board failed to comply with the provisions of ORS 183.650 in various ways when it modified the ALJ's proposed order. We consider each of petitioner's first two assignments of error before turning, briefly, to her last two assignments.

Petitioner's first two assignments of error challenge the board's modifications of the ALJ's findings of historical fact. Those assignments are governed by subsections (3) and (4) of ORS 183.650, which provide:

"(3) An agency conducting a contested case hearing may modify a finding of historical fact made by the administrative law judge assigned from the Office of Administrative Hearings only if the agency determines that there is clear and convincing evidence in the record that the finding was wrong. For the purposes of this section, an administrative law judge makes a finding of historical fact if the administrative law judge determines that an event did or did not occur in the past or that a circumstance or status did or did not exist either before the hearing or at the time of the hearing.

"(4) Notwithstanding ORS 19.415(3), if a party seeks judicial review of an agency's modification of a finding of historical fact under subsection (3) of this section, the court shall make an independent finding of the fact in dispute by conducting a review de novo of the record viewed as a whole. If the court decides that the agency erred in modifying the finding of historical fact made by the administrative law judge, the court shall remand the matter to the agency for entry of an order consistent with the court's judgment."

In *Corcoran v. Board of Nursing,* 197 Or App 517, 107 P3d 627 (2005), we considered, in detail, the operation of

subsections (3) and (4). As we explained, one of the significant changes wrought by the enactment of ORS 183.650 in 1999 was the "redefin[ition]" of our role in reviewing an agency's modification of a finding of historical fact made by an ALJ from OAH in a contested case proceeding. 197 Or App at 524. Specifically, that review changed from determining whether the agency's finding of historical fact was "supported by substantial evidence in the record viewed as a whole," *id.* at 525, to one in which, under subsection (4), we find the disputed historical fact *de novo*, under a preponderance of the evidence standard, *id.* After examining the impetus behind the 1999 enactment—and to avoid "appellate chaos" under that standard of review—we instructed petitioners seeking *de novo* review under subsection (4) that they must

"(1) separately identify *each* challenged finding of historical fact in the agency's final order; (2) identify the finding of historical fact in the ALJ's proposed order that the agency's finding 'modified'; and (3) explain why, with respect to each such 'modified' finding, the agency's finding is contrary to the preponderance of the evidence."

*Id.* at 527-28 (emphasis in original).

We note that *Corcoran* was decided under an earlier version of ORS 183.650. At the time, ORS 183.650(3) provided that an agency could modify a finding of historical fact made by an ALJ only if it determined that the finding was "not supported by a preponderance of the evidence in the record." *See* ORS 183.650 (2005). In 2009, the legislature amended subsection (3) to the text set out above. *See* Enrolled Senate Bill (SB) 274 (2009), § 7; Or Laws 2009, ch 866, § 7. As a result, to modify an ALJ's finding of historical fact in this context, the agency must now determine that "there is clear and convincing evidence in the record that the finding was wrong." ORS 183.650(3). The legislature did not similarly change—or, indeed, make any changes at all to— the *court's* review function under subsection (4). Nor does the legislative history of SB 274 indicate that the legislature had any such change in mind.[8] Thus, we conclude that the

---

[8] The parties do not present any legislative history—or, indeed, deal with the 2009 amendments at all. *See* ORS 174.020(3) ("A court may limit its consideration of legislative history to the information that the parties provide to

2009 amendments to ORS 183.650(3) have not altered the court's standard of review of an agency's modification of an ALJ's finding of historical fact: It remains the case that we review those facts *de novo*, applying a preponderance of the evidence standard to our assessment of the record. It follows that a petitioner seeking to invoke our *de novo* review under subsection (4) must still—as we explained in *Corcoran*—"specifically identify *each* challenged modification of a finding of historical fact and *explain* why that modification was erroneous as unsupported by a preponderance of the evidence." 197 Or App at 526 (emphasis in original).

With that backdrop in mind, we turn back to petitioner's first two assignments of error.[9] In those assignments, she contends that the board (1) "erred in failing to comply with the requirements of ORS 183.650(3) when it modified historical findings of fact by the ALJ in a substantial manner without determining that there was clear and convincing evidence in the record that the finding was wrong" and (2) "violated ORS 183.650(3) by deleting ALJ Findings of Fact (13), (15), (16), (20)-(23), (28), (29), (31), (35), (37), (40), (42) and (49)." As will become clear below, for ease of understanding, we consider the assignments of error in reverse order.

the court. A court shall give the weight to the legislative history that the court considers to be appropriate."). Our own research indicates that, in enacting the 2009 amendments to ORS 183.650, the legislature's clear intent was to make it more difficult for agencies to disregard findings of historical fact made by ALJs in cases governed by ORS 183.650. *See, e.g.*, Audio Recording, Senate Floor Debate, SB 274, Apr 28, 2009, at 1:13:07 (statement of bill's carrier Sen Floyd Prozanski), https://olis.leg.state.or.us (accessed Oct 1, 2014); Audio Recording, House Floor Debate, SB 274, June 10, 2009, at 3:29:33 (statement of bill's carrier Rep Chris Garrett), https://olis.leg.state.or.us (accessed Oct 1, 2014). However, neither body addressed the court's review function in its hearings on the bill.

[9] Petitioner presents those two assignments of error together without separately identifying the proper standard of review as to each and framing her legal arguments accordingly. That approach is not appropriate where, as here, the assignments require different standards of review and present different legal issues. *See* ORAP 5.45(5) ("[E]ach assignment of error shall identify the applicable standard or standards of review, supported by citation to the statute, case law, or other legal authority for each standard of review." (Footnote omitted.)); ORAP 5.45(6) ("If several assignments of error present essentially the *same* legal question, the argument in support of them may be combined so far as practicable." (Emphasis added.)); *Dillard and Dillard*, 179 Or App 24, 26 n 1, 39 P3d 230, *rev den*, 334 Or 491 (2002) ("The requirement that parties to an appeal set out the proper standard of review for each assignment of error is not a mere formality.").

Petitioner contends that the board's deletions of findings of fact 13, 15, 16, 20-23, 28, 29, 31, 35, 37, 40, 42 and 49 are subject to our *de novo* review under ORS 163.650(4). However, with one exception, petitioner does not heed the warning that we announced in *Corcoran*. Instead, much like the deficiency identified in *Corcoran* itself, petitioner sets out with the required specificity and explanation only one finding of fact that the board modified—ALJ finding of fact number 37—asserting that it "is *typical* of the [b]oard's failure to follow the requirements of ORS 183.650(3)." (Emphasis added.) That approach is insufficient to invoke our *de novo* review of *all* of the board's modifications to the historical facts found by the ALJ. *See Corcoran*, 197 Or App at 527 ("[T]o the extent that a future petitioner merely raises an omnibus or otherwise ill-focused challenge under ORS 183.650(4) to the correctness of the findings of fact in an agency's final order, we will reject that challenge as unreviewable."). As to finding 37, however, petitioner specifically points to evidence in the record that supports the ALJ's finding and is contrary to the board's finding. That is sufficient to trigger *de novo* review by us under ORS 183.650(4) of *that* question of historical fact.

Finding number 37 was probative of the allegation that petitioner had failed to provide parents with child's counseling records in violation of ORS 675.745(1)(d) and *former* OAR 833-060-0051(12).[10] Part of petitioner's defense to that allegation was that she had relied on advice from the board in not turning over the records. In finding 37, the ALJ found the following:

"[Petitioner] telephoned the [b]oard on October 7 and spoke with Becky Ecklund (Ecklund), the [b]oard's Executive Director, about the matter [referring to father's October 6, 2008, letter asking for child's file]. [Petitioner] told Ecklund that the case had resulted in her filing a report with DHS,

---

[10] *Former* OAR 833-060-0051(12) provided:

"A licensee provides clients reasonable access to records concerning them and should take due care to protect the confidences of others contained in those records, or when information from others about the client could result in harm to that person or persons upon disclosure to the client. Following guidelines set forth in ORS 192.518(2) and 675.765(1), unless otherwise ordered by the court, parents shall have access to the client records of juveniles who are receiving professional services from the licensee."

and that she had concerns [c]hild would be placed at risk of neglect and possibly abuse, particularly because [father] had told [petitioner] that he thought [c]hild was exaggerating her story. [Petitioner] asked Ecklund if she had to release [c]hild's records to the parents. Ecklund told [petitioner] that she receives calls like this from counselors, and that based on what the [b]oard's attorneys have advised, a counselor does not need to release a child's records to the parents if the counselor believes the child might be exposed to further danger. [Petitioner] made a note of her conversation with Ecklund in [c]hild's session notes immediately after talking to Ecklund."

(Record citations omitted.) The board, however, rejected those findings and found instead:

"Becky Ecklund (Ecklund) is the [b]oard's Executive Director. Ms. Ecklund cannot recall talking to [petitioner] in October 2008. Ms. Ecklund testified that if she gets calls from licensees, the first thing she says is that 'I'm not an attorney and I can not give you legal advice.' When the licensee confirms that they are not seeking legal advice, Ms. Ecklund testified that she usually reviews the [b]oard's administrative rules with the licensee to see if they apply to the situation 'And then kind of, just kind of talk though [sic] the situation. I never tell people what they should do.' Ms. Ecklund also testified that in many cases when she talks to licensees, she 'jots' down notes about the topics discussed. However, she had reviewed her files and has no notes of ever speaking to [petitioner]. Ms. Ecklund added that she probably also would have told a licensee that he or she should consult with their attorney about the situation."

(Record citation omitted.) Based on those findings, the board rejected petitioner's defense and concluded, "As [petitioner] failed to prove Ms. Ecklund provided any advice to her, the [b]oard finds that [petitioner's] refusal to provide [c]hild's records to the parents, despite their repeated requests, violates *former* OAR 833-060-0051(12)."

Applying a preponderance of the evidence standard on *de novo* review, we independently find the facts as found by the ALJ. In an entry for October 7, 2008, at 4:00 p.m.—the same day that petitioner received parent's request for child's file—petitioner documented the following in her clinical notes:

"After consultation [with business owners Cleary and Donaldson] on October 7, 2008, therapist called the Oregon Board of Licensed Professional Counselors and Therapists in Salem[,] Oregon, and spoke directly to Becky [Ecklund], Executive Director of the LPC Board. Therapist asked her if I was required to release a copy of the file to my client's parents, just because they asked for it. Therapist advised Ms. [Ecklund] that this case had resulted in a report to Child Protective Services, and that I was very concerned that the content of my 10YO client's disclosures to me could put her at further risk of neglect and abuse, especially given the fact that her father and [*sic*] revealed to me by phone on September 29th, that he thought his daughter was exaggerating her story.

"Ms. [Ecklund] advised this therapist that the [b]oard hears this question often. Ms. [Ecklund's] response was as follows[:] 'Based on what our attorney tells us, it is up to you. You don't have to release the file if you believe the client could be exposed to further violence or neglect, as a result of releasing the information.' Ms. [Ecklund] stated that this information is based upon the LPC Board's attorney's interpretation of HIPPA Federal Regulations."

In our view, that contemporaneous note—made over a year before the board issued any notice of disciplinary action to petitioner—is compelling evidence that, as the ALJ found, petitioner was told by the board that she did not need to release child's records to parents if she believed that child might be exposed to further danger.

As to that point, the board asserts on review only that "petitioner's notes are no more credible than her testimony in this instance," because, at that point, it was "apparent" that petitioner's position was "adverse" to parents. We are not persuaded that that circumstance carries the weight that the board ascribes to it. We note that the board otherwise relies heavily on petitioner's contemporaneous clinical notes *to discount* her hearing testimony—that is, it found that her hearing testimony was unreliable precisely *because* it was inconsistent with her contemporaneous notes. The board cannot have it both ways. More importantly, after independently reviewing the record, we do not find Ecklund's testimony—on which the board relied to find that petitioner had not been advised as the ALJ found—to

be contrary to petitioner's testimony. Ecklund testified only that *she did not recall* speaking to petitioner. Significantly, she also testified that petitioner's clinical notes are generally consistent with the advice that she would give therapists when they called her, albeit "[p]robably not [in] those words." Accordingly, even disregarding petitioner's hearing testimony as the board did,[11] we conclude that the preponderance of the evidence establishes the facts to be as the ALJ found them.

Consequently, we remand for the board to reconsider, under a correct understanding of the facts, its conclusions that petitioner had violated ORS 675.745(1)(d) and *former* OAR 833-060-0051(12) by not providing child's counseling records to parents and that that conduct was also grossly negligent. In addition, because the board did not find that each violation by petitioner independently justified the sanctions that it imposed, on remand, the board must also reassess the sanctions.

Turning back to petitioner's first assignment of error, we understand her to argue that the board failed *to make* the determination required under subsection (3)— that is, that the board did not determine that the record contained clear and convincing evidence that was contrary to the ALJ's findings. In other words, she appears to contend that the board failed to properly apply the "clear and convincing evidence" standard that subsection (3) required the board to meet to modify the ALJ's findings of historical fact.

The problem with that contention is that, under the statutory scheme established by the legislature, there is no relief that we can give petitioner even if she is correct. As illustrated above, the legislature has created, in subsection (4), a statutory remedy for challenges to an agency's modification of historical facts found by an ALJ. That remedy is to have those facts independently determined by us on judicial

---

[11] Although, as we explained in *Corcoran*, 197 Or App at 529, 529 n 10, we are generally entitled, on *de novo* review, to make our own assessment of witness credibility, we need not do so here because, regardless of petitioner's hearing testimony, we conclude that the remaining evidence on the disputed finding preponderates in petitioner's favor.

review. As just discussed, to achieve *that* remedy, a petitioner must follow the procedure described in *Corcoran*—that is, the petitioner must specifically identify each challenged finding and explain why the agency erred in making the particular modification. 266 Or App at 61-63.

Here, even if petitioner were correct that the board failed to properly apply the "clear and convincing evidence" standard required under subsection (3), a determination by us to that effect would lead nowhere because our review task regarding disputed findings of fact is solely as described in subsection (4). Said another way, an agency's violation of subsection (3) does not provide a basis for judicial relief *except through* our exercise of *de novo* review under subsection (4) and our determination of facts contrary to those found by the agency.[12] In short, under the statutory construct established by the legislature, there is no relief that can be granted to petitioner with respect to the board's modifications of findings of historical fact other than through our exercise of *de novo* review under subsection (4). Accordingly, we reject petitioner's first assignment of error.

Petitioner's third assignment of error implicates a different subsection of ORS 183.650—subsection (2). Specifically, petitioner asserts that the board "erred in failing to comply with the requirements of ORS 183.650(2) when it modified the form of order in a substantial manner, and did not identify the modifications and provide an explanation as to why the agency made the modifications." Subsection (2) of ORS 183.650 provides:

---

[12] In all events, we are convinced that the board correctly applied the statutory standard prescribed in subsection (3). As discussed above, the board detailed at length—pointing to 20 specific instances of inconsistency or demonstrated bias in the record—why it found petitioner's testimony at the hearing "self-serving, biased, and unreliable." The board then explained that, based on that evidence, it "finds by clear and convincing evidence that the testimony of [petitioner] is unreliable and gives no weight to such testimony and statements in all cases where [petitioner's] testimony was contradicted by or is inconsistent with other evidence in the record." And, it specifically identified each of the 15 findings that it deleted on that basis—that is, because the finding was based on petitioner's testimony and was contradicted by or inconsistent with other evidence in the record. Thus, for each finding that the board deleted—all of which were predicated on petitioner's testimony—the board, in effect, found that the finding was erroneous because there was clear and convincing evidence that petitioner's testimony was not to be believed—in other words, clear and convincing evidence to the contrary.

"If [as in this case] the administrative law judge assigned from the office will not enter the final order in a contested case proceeding, and the agency modifies the form of order issued by the administrative law judge in any substantial manner, *the agency must identify the modifications and provide an explanation to the parties to the hearing as to why the agency made the modifications.*"

(Emphasis added.) As we have previously held, subsection (2) applies to "substantial modifications of an ALJ's proposed order *other than modifications of findings of historical fact.*" *Becklin v. Board of Examiners for Engineering,* 195 Or App 186, 206, 97 P3d 1216 (2004), *rev den,* 338 Or 16 (2005) (emphasis added).

Petitioner's assignment is not well taken. We begin by noting that petitioner does not identify the appropriate standard of review, as required by ORAP 5.45(5).[13] Next, she introduces her argument as follows:

"The [b]oard alleges seventy-one additional Findings. Almost all of those Findings incorporate and/or modify the ALJ's historical findings of fact. None of the seventy-one Findings point to the ALJ's Order nor do the additional findings explain the reason or basis for the [b]oard's modification of historical fact."

(Record citation omitted.) We find that argument to be nearly inscrutable. For example, it is unclear why the board's *incorporation* of the ALJ's findings would constitute error at all. Moreover, as noted, subsection (2) does not apply to an agency's modifications of findings of historical fact, which are instead governed by subsections (3) and (4). *Becklin,* 195 Or App at 206. And, to the extent that petitioner is attempting to challenge the board's *additional* findings, which *are*

---

[13] Instead, under the "standard of review" section of her brief for this assignment of error, petitioner asserts: "The Board's application of ORS 183.650(3) [is reviewed] for errors of law. The Board's modification of a finding of historical fact under ORS 183.650(3) is reviewed de novo on the record. ORS 183.650(4)." Neither standard relates to her assignment of error, which asserts error under ORS 183.650(2). As we have previously cautioned, the requirement to identify the standard of review for an assigned error is not simply a formality. *See, e.g., Dillard,* 179 Or App at 26 n 1; *State v. Schwartz,* 173 Or App 301, 305 n 2, 21 P3d 1128, *rev den,* 333 Or 162 (2001) (observing that "[t]his requirement serves the purpose of causing the parties to frame their arguments appropriately" and "helps to identify any differences that the parties may have regarding the proper scope of review").

reviewed under subsection (2), *id.*, that review is for substantial evidence, and petitioner does not contend that any of the board's additional findings fail to satisfy that standard.

Instead, petitioner relies solely on *Teacher Standards and Practices v. Bergerson*, 342 Or 301, 153 P3d 84 (2007), to support her position that the board erred in this case, arguing that, "[a]lthough the [b]oard identified and explained some of the foregoing modifications in its Amended Final Order as set forth above, the vast majority of the [b]oard's modifications are not identified or explained in the Amended Final Order." *Bergerson* does not aid petitioner. In that case, the central issue was whether the agency's final order relied on erroneous interpretations of the relevant rules and statutes; the court concluded that it did and reversed the final order on that basis. *Id.* at 310-17.

Although recognizing that it was unnecessary, the court went on to address the petitioner's argument that the agency had violated ORS 183.650(2) in modifying the ALJ's order. One of the questions raised by that argument was whether the agency's modifications were sufficiently "substantial" to trigger the identification and explanation requirements under ORS 183.650(2). 342 Or at 319. The Supreme Court held that, because subsection (2) refers to "'the effect of the modifications' (plural) as changing the outcome," the petitioner, on review, did not need to identify each modification that the petitioner believed to be substantial and demonstrate that each one, by itself, changed the outcome." *Id.* (quoting ORS 183.650(2)).

However, *Bergerson* did *not* say that the agency was required to *separately* identify and explain each and every modification it had made to the ALJ's proposed order. There, the "vast majority" of agency modifications were not identified or explained in the final order. *Id.* at 318. The Supreme Court held that the agency had modified the proposed order in a substantial manner and remanded for it to identify and explain those modifications. As to that point, the court simply noted that, on remand, the agency should, "consistent with its obligation under ORS 183.650(2), identify and explain any deletions, additions, or alterations that modify the ALJ's proposed order in a substantial manner." *Id.* at 320.

Viewed in its totality, we understand the board's order to have complied with that requirement here. It is apparent from the order that the board substantially modified the ALJ's proposed order based on its determinations that (1) the credibility of witnesses was pivotal to the issues in the case; (2) petitioner's testimony was unreliable; (3) father's and mother's testimony was credible; and (4) Sabin's expert testimony was more persuasive than Johnson's, upon which the ALJ had relied. The board also examined, in depth, how it had arrived at each of those determinations. Moreover, the board identified several findings made by the ALJ that it was disregarding because they were "[u]nnecessary, [i]rrelevant, or [i]mmaterial." And, the board added additional findings of its own, explaining, by way of record citation, that those additional findings were based on the testimony of father, mother, or Sabin, or other evidence in the record.[14] The board then modified the ALJ's analysis and conclusions of law accordingly. That is sufficient to satisfy the requirement of ORS 183.650(2) that the board "identify the modifications and provide an explanation to the parties to the hearing as to why the agency made the modifications." Accordingly, we reject petitioner's third assignment of error without further discussion.

Finally, petitioner argues in her fourth assignment of error that the board "erred in making credibility findings without complying with either ORS 183.650(2) or ORS 183.650(3)." In a one-paragraph argument, petitioner takes issue with the board's statement that the ALJ's order "'did not make any specific findings regarding the credibility of the witnesses,'" when, according to petitioner, there are "three specific statements by the ALJ that [petitioner] was credible in her testimony."[15] However, beyond simply pointing to those statements, petitioner does not explain why that matters or why, accordingly, the board erred under

---

[14] As noted, petitioner does not contend that any of those additional findings were not supported by substantial evidence in the record.

[15] The ALJ stated that petitioner had "credibly testified" that she had told child that she could keep a journal, that "she did not at any time see marks on [c]hild or any other evidence that would rise to the level of the definitions of 'physical injury' or 'assault,'" and that petitioner had "credibly denied" that she had told parents that she would not report the abuse if they continued child in counseling.

ORS 183.650(2) or (3). We do not "make or develop a party's argument when that party has not endeavored to do so itself." *Beall Transport Equipment Co. v. Southern Pacific*, 186 Or App 696, 700 n 2, 64 P3d 1193, *adh'd to on recons*, 187 Or App 472, 68 P3d 259 (2003); *accord Day v. Elections Division*, 246 Or App 140, 151, 265 P3d 16 (2011); *Friends of the Columbia Gorge v. Columbia River Gorge*, 236 Or App 479, 505 n 17, 238 P3d 378 (2010), *rev den*, 349 Or 654 (2011). Beyond that, petitioner merely makes a bald assertion, without *any* explanation, that "the [b]oard's credibility findings substantially modify the ALJ's historic findings of fact without identifying or explaining which historic facts were modified [ORS 183.650(2)] nor the [b]oard's compliance with [the] applicable standard [ORS 183.650(3)]." (First and third set of brackets in petitioner's brief.) Accordingly, we reject petitioner's fourth assignment of error without further explanation.

In sum, we reject all of petitioner's assignments of error, except, on *de novo* review, we agree with petitioner that the board erred in modifying ALJ finding of fact number 37. Accordingly, we reverse and remand for the board to reconsider its conclusions that petitioner violated ORS 675.745(1)(d) and *former* OAR 833-060-0051(12) by not providing child's counseling records to parents and that that conduct was grossly negligent. On remand, the board must also reassess the sanctions that it imposed.

Reversed and remanded for reconsideration.