Submitted May 7, affirmed September 24, 2008

James DAVIS,
dba Coast Drafting & Design,
*Petitioner,*

*v.*

BOARD OF ARCHITECT EXAMINERS,
*Respondent.*

Board of Architect Examiners
04106; A133066

193 P3d 1019

Richard S. Diaz and Macpherson, Ginter & Diaz filed the briefs for petitioner.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Michael C. Livingston, Senior Assistant Attorney General, filed the brief for respondent.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

SCHUMAN, J.

## SCHUMAN, J.

After holding a contested case hearing, the Board of Architect Examiners (board) issued an order imposing a $5,000 civil penalty on petitioner James Davis, dba Coast Drafting and Design, for practicing architecture without a license. ORS 671.020(1) (2001), *amended by* Or Laws 2003, ch 763, § 2. Petitioner seeks judicial review. He argues that the board's interpretation of the statutory definition of the "[p]ractice of architecture," *former* ORS 671.010(5) (2001), *renumbered as* ORS 671.010(6) (2003),[1] is overly broad because it includes designing and planning for buildings that were never erected and that, under the correct interpretation, he committed no violation.[2] We affirm.

The board found the following facts, which, because they are uncontested on judicial review, we adopt. *Meltebeke v. Bureau of Labor and Industries*, 322 Or 132, 134, 903 P2d 351 (1995). Davis is the owner of Coast Drafting and Design. Neither Davis nor any other employee of Coast Drafting and Design is a licensed architect. In 1996, Kent Seida, the sole proprietor of Seida Construction, saw an advertisement for Coast Drafting and Design and contacted Davis to inquire about Davis providing designs for a strip mall that Seida was planning to build in Lincoln City. On July 9, 1996, a partner at Coast Drafting and Design entered into a "Proposal and Contract" with Seida to create preliminary plans for this "Seida Center." The agreement defined preliminary plans as sufficient to create "a final floor plan and elevations."

Pursuant to the "Proposal and Contract," petitioner's employee completed drawings for three proposals, and Seida selected one for the Seida Center. The other two were stamped, "Preliminary Not For Construction." Shortly

---

[1] Hereafter all references to ORS 671.020(1) and ORS 671.010(5) are to the 2001 statutes.

[2] Petitioner also assigns error to the board's use of findings of fact that, he argues, are not relevant to any issue specified in the "Amended Notice of Intent to Impose Civil Penalty." The board, however, expressly stated that it "could and would impose the civil penalty * * * without reference" to the specified findings and that the "evidence establishes the unlicensed practice of architecture even without reference to" those findings. The board's order did not rely on the findings, nor do we in our review of that order.

thereafter, in October of 1996, petitioner entered into another contract with Seida, in which petitioner agreed to provide the following services:

"1.   Provide permit ready drawings for a two (2) story, wood frame retail strip center on Hwy 101, Lincoln City, Oregon as per attached sketch * * *.

"2.   Incorporate civil and structural drawings, done by others, into the working drawings.

"3.   Periodic site visits and reports to Client during course of construction.

"4.   Provide reproductions of drawings as follows, 20 sets Preliminary Drawings for Site Plan Review, and 12 Sets Final Working Drawings."

Petitioner's employee subsequently produced two floor plan drawings showing two levels of building units with square footage. Both drawings were stamped by petitioner. Later, petitioner's employee prepared six drawings incorporating the earlier drawings of the Seida Center. Two of the drawings included building elevations, and four of them included square foot measurements for the building. Petitioner and Seida then submitted the plans to the Lincoln City Planning Director, who approved them.

In 1998 and 1999, petitioner drew more detailed plans of the proposed Seida Center, including framing plans and section details. These drawings were stamped by petitioner and the engineering firm with which petitioner had subcontracted. However, due to circumstances that are not part of the record in this case, the Seida Center project was abandoned; the buildings were never erected.

On October 26, 2004, the board served a notice of intent to assess a civil penalty of $10,000 against petitioner on the ground that petitioner had practiced architecture without a license and had misrepresented himself as an architect. Petitioner filed an appeal. In an amended notice issued approximately one year later, the board dropped the allegation regarding misrepresentation and reduced the proposed penalty to $5,000. The notice alleged, in addition to the facts related above, that petitioner's "conduct in the planning

and design of the [Seida Center] at each stage of the project constitutes the practice of architecture."

A hearing was held, and an administrative law judge issued a proposed order concluding that petitioner had practiced architecture without a license and that he should be fined $5,000. Petitioner filed exceptions, which the board rejected in a final order.

The relevant portion of ORS 671.020(1) provided:

"In order to safeguard life, health and property and to eliminate unnecessary loss and waste in this state, no person shall practice the profession of architecture * * * without first qualifying before the State Board of Architect Examiners and obtaining a certificate of registration * * *."

ORS 671.010(5) provided, in part:

" 'Practice of architecture' means any one or combination of the following practices by a person: The planning, designing or supervision of the erection, enlargement or alteration of any building or of any appurtenance thereto other than exempted buildings."

"Practice of architecture" is an inexact statutory term—that is, neither a term with such a precise definition that no interpretation is necessary nor a term (such as "good cause") indicating that the legislature intended to delegate the definition of that term to an agency charged with implementing the statute. *See Springfield Education Assn. v. School Dist.*, 290 Or 217, 223, 621 P2d 547 (1980) (summarizing the categorization of statutory terms).

"When applying such statutory terms to specific facts, whether by order or by rule, the task of the agency, and ultimately of the court, is to determine whether the legislature intended the compass of the words to include those facts. The determination of the meaning of a statute is one of law, ultimately for the court."

*Id.* at 224.

Davis does not deny that he produced plans and designs for a proposed nonexempt building. He argues only that the statutory definition does not encompass planning

and designing buildings that are never erected. We conclude that petitioner's proposed definition cannot be reconciled with the statute's text, which unambiguously provides that the practice of architecture includes "planning" or "designing" the "erection * * * of any building." One plans the erection of a building or executes designs for it regardless of whether the plans or designs ever come to fruition. The violation of ORS 671.020, therefore, occurs at the time of planning or designing, if the plans or designs are executed for the purpose of erecting a building.

In the present case, that purpose is clear. Petitioner agreed to provide "permit ready drawings"; although that term is not defined in the final contract with Seida, it is defined in petitioner's proposal as drawings that "will be sufficient to obtain local building permits." The contract also provides that petitioner will incorporate into its plans civil and structural drawings done by others but adopted by petitioner, will perform "[p]eriodic site visits and reports to Client during course of construction," and will provide "Final Working Drawings."

Petitioner argues that defining the practice of architecture so as to include plans and designs that are not used in the construction of a building fails to implement the overarching purpose of the regulation of architects, that is, "to safeguard life, health and property and to eliminate unnecessary loss and waste." ORS 671.020(1). We disagree. Public safety and prevention of waste can be safeguarded by prohibiting activities that are undertaken in contemplation of erecting buildings; the state logically need not wait until the erection actually occurs. Petitioner also argues that, under the board's interpretation of ORS 671.010(5), a client who meets with a contractor and sketches on a paper napkin the rough outline of a proposed home could be penalized for the "[p]ractice of architecture." If the board decides to penalize a person for that activity, we will have the opportunity to evaluate petitioner's hypothesis. At this time, however, our task is only to apply the statutory term "to specific facts" before us and "to determine whether the legislature intended the compass of the words to include those facts." *Springfield*

*Education Assn.*, 290 Or at 224. We conclude that the legislature intended its definition of "[p]ractice of architecture" to encompass what petitioner did in this case.

Affirmed.