Argued and submitted November 4, 2014, reversed and remanded
February 24, petition for review allowed August 4, 2016 (360 Or 235)

TWIST ARCHITECTURE & DESIGN, INC.;
David Hansen; and Kirk Callison,
*Petitioners,*

*v.*

OREGON BOARD OF ARCHITECT EXAMINERS,
*Respondent.*

Board of Architect Examiners
10035; A152929

369 P3d 409

J. Kevin Shuba argued the cause for petitioners Twist Architecture & Design, Inc., and Kirk Callison. With him on the opening brief was Garrett Hemann Robertson P.C. On the reply brief was J. Kevin Shuba. David Hansen joined the reply brief *pro se.*

David Hansen filed the brief *pro se.*

Matthew J. Lysne, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Sercombe, Presiding Judge, and Hadlock, Chief Judge, and Tookey, Judge.

SERCOMBE, P. J.

## SERCOMBE, P. J.

Twist Architecture & Design, Inc. (Twist), and its principals, Kirk Callison and David Hansen, seek judicial review of a final order of the Oregon Board of Architect Examiners (board) imposing a $10,000 civil penalty against each for the unlawful practice of architecture under ORS 671.020(1) and (4), and OAR 806-010-0037(7).[1] Following a contested case hearing before an administrative law judge (ALJ), the board determined that petitioners had violated that statute and rule. The board found violations as a result of (1) Twist's preparation of three feasibility studies in Oregon, (2) its use of its logo on those studies and on invoices for the work, (3) advertising Oregon projects on Twist's website, and (4) inclusion of the statement "Licensed in the State of Oregon (Pending)" on Callison's and Hansen's biography pages on Twist's website.

On review, petitioners contend that the board erred in modifying the ALJ's findings of historical fact, determining that petitioners' conduct violated Oregon law, and assessing civil penalties. As explained below, we conclude that (1) the board erred in determining that petitioners

---

[1] ORS 671.020 provides, in part:

"(1) In order to safeguard health, safety and welfare and to eliminate unnecessary loss and waste in this state, a person may not engage in the practice of architecture or assume or use the title of 'Architect' or any title, sign, cards or device indicating, or tending to indicate, that the person is practicing architecture or is an architect or represent in any manner that the person is an architect, without first qualifying before the State Board of Architect Examiners and obtaining a certificate of registration as provided by ORS 671.010 to 671.220.

"* * * * *

"(4) A person may not practice or attempt to practice the profession of architecture, or assume the title of 'Architect,' 'Consulting Architect' or 'Foreign Architect,' or use in connection with the business of the person any words, letters or figures indicating the title of 'Architect,' 'Consulting Architect' or 'Foreign Architect' without first complying with ORS 671.010 to 671.220."

OAR 806-010-0037(7) provides:

"Except as provided in this rule, no title, sign, cards, or device may be used to indicate or tend to indicate that the person or firm or business using the title is practicing architecture or is an architect, or represents in any manner that the person or firm or business is an architect or architectural practice."

engaged in the unlicensed practice of architecture because Twist's preparation of the feasibility studies did not constitute the "practice of architecture," (2) the board's determination that Twist violated the statute and rule for using its logo on those studies lacks substantial reason, and (3) the board's determination that Callison and Hansen violated the statute and rule for using the phrase "Licensed in the State of Oregon (Pending)" on their website biographies lacks substantial reason. However, we conclude that the board did not err when it modified the ALJ's findings of fact, or in determining that Twist violated the law by advertising Oregon architectural projects on its website. Accordingly, we reverse and remand.

Except as otherwise noted, we state the facts from the undisputed historical findings of the board. Twist is an architecture and design firm that was formed in 2008 by its two principals, Callison and Hansen, and registered as a professional corporation in the State of Washington. During the relevant time period, Callison was licensed to practice architecture only in Washington; Hansen was not licensed in any state.

In October 2008, Twist entered into an agreement with Gramor Development (Gramor) to perform "concept master planning design services" for three projects in Oregon: the 172nd Project, the Progress Ridge II Project, and the Sherwood Project. For each of the projects, Twist prepared feasibility studies consisting of "schemes" that portrayed aerial views of possible development on the properties drawn to scale. The schemes depicted the properties' boundaries and surrounding streets, and the basic placement of buildings, parking spots, and trees. Some of the schemes included the dimensions and square footage of the proposed buildings. For each project, Twist provided multiple schemes with different options for the size and location of the buildings and parking areas. Each drawing contained Twist's logo, which contained the words "architecture" and "design."[2]

---

[2] A representative scheme is attached as an appendix to this opinion. That scheme includes calculations of the total square feet of the buildings, floors of the buildings, and parking areas that are displayed.

Gramor used the feasibility studies to determine if construction was feasible, given, among other things, the layout of the properties, access to existing roads, and the ratio of parking spots to buildings. Gramor also used the schemes as promotional materials to market the properties to prospective tenants, who would need to prelease commercial spaces in order to fund the development projects. The schemes prepared by Twist were not construction drawings, and would not have been sufficient to obtain building permits.

Upon its formation, Twist developed a website to advertise its services. The website contained biographical pages for Callison and Hansen, which included categories for education, professional affiliations, and representative projects. Callison's and Hansen's biography pages each stated "Licensed in the State of Oregon (Pending)." At the time the website was created, Callison intended to file a reciprocity application for licensure in Oregon. He filled out the necessary forms but, due to a downturn in the economy, never submitted the paperwork to the board. Hansen had not taken any steps to apply for licensure. Callison's biography listed the "Sherwood Town Center" project below the heading "Selected Experience." Several projects were listed below the heading "Selected Experience" on Hansen's biography, including the "Progress Ridge Town Center (under construction)," the "Sherwood Town Center," and "Lake Oswego" projects.[3] Beneath each of the images of the projects was the phrase "architectural design."

On May 10, 2011, the board issued to petitioners a notice of intent to impose civil penalty for the unlicensed practice of architecture pursuant to ORS 671.020(1) and (4), and OAR 806-010-0037(7). On March 6, 2012, after the board issued an amended notice of proposed action against petitioners, an ALJ conducted a contested case hearing. Callison and Hansen testified at the hearing, as did Matt Grady from Gramor, board investigator Darroll Morehouse, and architect Darwin Doss. The feasibility studies prepared

---

[3] The Progress Ridge Town Center project referred to in Twist's website is different from the Progress Ridge II project that is the basis for the unlicensed-practice violation.

by petitioners for all three projects were admitted as exhibits at the hearing.

After the hearing, the ALJ issued a proposed order concluding that Callison and Hansen each had violated ORS 671.020(1) and (4), and OAR 806-010-0037(7), when they used the phrase "Licensed in the State of Oregon (Pending)" and referenced Oregon architectural projects in their website biographies. However, the ALJ found that Callison and Hansen did not violate the statute or rule by creating the feasibility studies for the 172nd, Progress Ridge II, and Sherwood projects. The ALJ also found that Twist did not violate the statute or rule when it used images of two projects in Oregon on its website. The ALJ proposed that a $5,000 civil penalty be assessed against Hansen, and a letter of concern be provided to Callison. In his proposed order, the ALJ made findings of historical fact that the drawings prepared for the 172nd, Progress Ridge II, and Sherwood projects contained no "foundations, floors, walls and roof, footings, columns, posts, girders, beams, joists, rafters, or bearing partitions."

On August 3, 2012, the board issued an amended proposed order that included supplemental and modified findings of historical fact and modified conclusions of law. The board determined by clear and convincing evidence that the ALJ's finding that the drawings contained no walls and roofs was incorrect. The amended proposed order stated:

"The drawings contain walls, with dimensions, and the site view is of the roof of the buildings and lists square footages. Included in the drawings are drawings of buildings with shadowing and shading to differentiate the walls from the roof."

On October 31, 2012, the board issued a final order adopting the factual findings and legal conclusions in the amended proposed order. The board determined that Twist and Hansen had violated ORS 671.020(1) and (4) for the work done on all three projects and that Callison had violated those provisions for his work on the 172nd and Sherwood projects. The board also determined that Twist violated ORS 671.020(1) and (4), and OAR 806-010-0037(7), for using the word "architecture" in its logo, which appeared

on the drawings and invoices for all three projects, and for displaying an image of a building labeled Progress Ridge Town Center and an image of the master plans from the Sherwood Town Center project on its website, describing its services on both those projects as including "architectural design." Finally, the board determined that Hansen and Callison had violated ORS 671.020(1) and (4), and OAR 806-010-0037(7), by including the phrase "Licensed in the State of Oregon (Pending)" on their website biographies. Civil penalties were imposed against each petitioner in the amount of $10,000.

In their first assignment of error, petitioners argue that the board erred in rejecting the ALJ's findings of historical fact, in amending the proposed order to delete those facts, and in including contrary facts in its final order. Pursuant to ORS 183.650(3), "[a]n agency conducting a contested case hearing may modify a finding of historical fact made by the administrative law judge assigned from the Office of Administrative Hearings only if the agency determines that there is clear and convincing evidence in the record that the finding was wrong."[4] On appellate review of the agency's modification of facts in this context, we review the modified facts *de novo* and make an independent finding of the facts in dispute. ORS 183.650(4); *Weldon v. Bd. of Lic. Pro. Counselors and Therapists*, 266 Or App 52, 63, 337 P3d 911 (2014), *rev den*, 356 Or 690 (2015).

As noted, in the proposed order, the ALJ found that the feasibility studies prepared for all three projects contained no "foundations, floors, walls and roof, footings, columns, posts, girders, beams, joists, rafters, or bearing partitions." On review, the board rejected the finding that the schemes did not contain walls and roofs, and determined that the schemes included shadowing and shading to differentiate the walls from the roofs of the buildings.

On *de novo* review, we independently find that fact as found by the board. The schemes for all three projects depict aerial views of structures that are labeled in the diagrams as "buildings." And, many of the schemes contain

---

[4] The ALJ in this case was assigned from the Office of Administrative Hearings.

shadowing and shading to represent those buildings in three dimensions, showing walls and roofs. Accordingly, the board did not err in rejecting the ALJ's finding and in modifying the finding of historical fact to state that the schemes depicted buildings that contained walls and roofs.

In their second assignment of error, petitioners argue that the board erred in determining that they had engaged in the unlicensed "practice of architecture," under ORS 671.020(1) and (4), by producing the feasibility studies for Gramor.[5] The board determined that petitioners had engaged in the "practice of architecture," explaining:

"The practice of architecture is defined in ORS 671.010(6)[6] as: 'the planning, designing or supervising of the erection, enlargement or alteration of any building or of any appurtenance thereto other than exempted buildings.' The plain, natural and ordinary meaning of the word 'designing' in this context is 'the art of making designs or sketches.' WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (unabridged 2002) (Webster's) at 612. The plain, ordinary and natural meaning of the word 'planning' in this context is 'to devise or project the realization or achievement of * * * prearrange the details of * * *.' Id. at 1730. Planning is not dependent on the production of a design or sketch but encompasses any activities that are the devising and projecting the realization or achievement of a goal. Under ORS 671.060(6), the goal of the designing and planning must be 'of the erection, enlargement or alteration of any building or of any appurtenance thereto other than exempted buildings.' As noted by the Court of Appeals, the Board has authority over 'activities undertaken in contemplation of erecting buildings * * *.' Davis v. Board of Architect Examiners, 222 Or App 370, 375, 193 P3d 1019 (2008).

"Applying this definition of the practice of architecture, the Board finds that the evidence shows that there was planning and designing undertaken in contemplation of

---

[5] Callison was not determined to be in violation for the Progress Ridge II project, so our opinion applies to him regarding only the 172nd and Sherwood projects.

[6] In 2013, the statute was amended and this subsection was renumbered as ORS 610.010(7), and the term "supervising" was replaced with the term "observing." Or Laws 2013, ch 196, § 1. Throughout this opinion, we refer to the version of the statute that was in effect at the time of the board's decision.

erecting buildings in each of the three projects and therefore there was the 'practice of architecture.'"

(Footnote omitted.) The board also concluded that petitioners violated the statute for "practicing the *profession* of architecture without registration." (Emphasis in original.) The board explained that petitioners performed the kind of "work that is performed by * * * architectural professionals in Oregon" and that is "tested on the examination for licensure in Oregon." The board noted that the work was completed on behalf of a paying client, who was billed at an hourly rate. The board considered it immaterial that the buildings were never actually built, concluding that the "practice of architecture" includes "activities undertaken in *contemplation of* erecting the buildings and is not dependent on whether the buildings are actually constructed." (Emphasis in original.)

Petitioners argue that preparation of the feasibility studies did not violate the statutes because they did not depict "buildings" and therefore could not be considered the "practice of architecture." Petitioners further argue that the practice of architecture involves assessing the intent of the individual preparing the work and determining whether the individual was planning for the actual erection of a building.

We closely analyzed the term "practice of architecture" in *Davis v. Board of Architect Examiners*, 222 Or App 370, 374, 193 P3d 1019 (2008), and concluded that the term "practice of architecture" was an "inexact statutory term." We explained that, "'[w]hen applying such statutory terms to specific facts, * * * the task of the agency, and ultimately of the court, is to determine whether the legislature intended the compass of the words to include those facts. The determination of the meaning of the statute is one of law, ultimately for the court.'" *Id.* (quoting *Springfield Education Assn. v. School Dist.*, 290 Or 217, 223, 621 P2d 547 (1980)). Thus, we review the board's legal conclusion, including its interpretation of the term "practice of architecture," for legal error. ORS 183.482(8)(a); *Topaz v. Board of Examiners for Engineering*, 255 Or App 138, 144, 297 P3d 498, *rev den*, 353 Or 714 (2013). We also review the board's order for substantial reason, which requires that the board articulate a "rational connection between the facts and the

legal conclusion it draws from them." *Ross v. Springfield School Dist. No. 19*, 294 Or 357, 370, 657 P2d 188 (1982); *see also* ORS 183.470(2) (requiring contested case orders to contain findings of fact that "consist of a concise statement of the underlying facts supporting the findings as to each contested issue of fact and as to each ultimate fact required to support the agency's order").

The relevant portion of ORS 671.020(1) provides that, "[i]n order to safeguard health, safety and welfare and to eliminate unnecessary loss and waste in this state, a person may not engage in the practice of architecture" without a license. Similarly, the relevant portion of ORS 671.020(4) states that "[a] person may not practice or attempt to practice the profession of architecture" without a license. The "practice of architecture" is defined as "the planning, designing or supervising of the erection, enlargement or alteration of any building or of any appurtenance thereto other than exempted buildings." ORS 671.010(6). A "building" is defined as "any structure consisting of foundations, floors, walls and roof, having footings, columns, posts, girders, beams, joists, rafters, bearing partitions, or a combination of any number of these parts, with or without other parts or appurtenances thereto." ORS 671.010(3).

In construing a statute, our goal is to discern the intent of the legislature that enacted the statute. *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009). In doing so, we first look to the text and context of the statute itself, along with any helpful legislative history, and finally apply general maxims of statutory construction. *Id.* at 171-72; *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). Words of common usage are to be given their natural, plain, and obvious meaning. *State v. Langley*, 314 Or 247, 255, 839 P2d 692 (1992).

ORS 671.010(6) expressly directs that the "planning, designing or supervising" be accomplished for the "erection, enlargement or alteration" of a building. In the context of a professional practice, the plain meaning of the term "planning" is "to devise or project the realization or achievement of" a particular goal. *Webster's* at 1730. The goal of architectural practice is actual construction of

buildings. Indeed, the board's own regulation discussing the definition of architecture provides that the practice includes "all analysis, calculations, research, graphic presentation, literary expression, and advice essential to the preparation of *necessary* documents for the design *and* construction of buildings, structures and their related environment whether interior or exterior." OAR 806-010-0075 (emphases added). Based on the text and context of ORS 671.010(6), we conclude that the practice of architecture necessitates the planning or preparing of work for use in actual construction, rather than planning for a building in the abstract.

The board's interpretation of the "practice of architecture" includes *any* activity undertaken in contemplation of the erection of a building, no matter how removed that activity might be from the actual construction of the building. Such a broad reading of the statute would proscribe activities surely not contemplated by the legislature to be prohibited.

In concluding that petitioners had engaged in the unlicensed practice of architecture, the board found that petitioners had engaged in activities "undertaken in *contemplation* of erecting the buildings." (Emphasis in original.) However, the board expressly found that "[t]he purposes of the site plans were to determine the feasibility of the site for constructing and leasing buildings and for marketing the site to attract lessees who would want to prelease the buildings." Thus, the board failed to draw a nexus between the work done by petitioners and the "erection, enlargement, or alteration" of any buildings. Indeed, the record shows that no such nexus exists. Gramor employee Grady testified that the schemes prepared by petitioners were not completed for the purpose of constructing any buildings, but rather were used to determine if construction was even feasible, given, among other things, the layout of the properties, access to existing roads, and the ratio of parking spots to buildings. Gramor also used the schemes to market the properties to prospective tenants, who would need to prelease commercial spaces in order to fund the development projects. The final products, which were no more than renderings of the existing conditions of the properties with preliminary sketches

showing a basic placement of buildings and parking areas, provided no building design, *i.e.*, specifications to facilitate the construction of any particular building, nor did production of those schemes advance any plan to erect, enlarge, or alter a particular building.

The work completed by petitioners contrasts greatly with the work described in *Davis*, on which the board relies. In concluding that Davis had engaged in the unlicensed practice of architecture, we noted that the purpose of his work was clear:

> "Petitioner agreed to provide 'permit ready drawings'; * * * defined in petitioner's proposal as drawings that 'will be sufficient to obtain local building permits.' The contract also provides that petitioner * * * will perform '[p]eriodic site visits and reports to Client during course of construction,' and will provide 'Final Working Drawings.'"

*Davis*, 222 Or App at 375. Thus, Davis agreed to prepare designs that were intended to be used during the construction of a building. Here, in contrast, the only evidence in the record was that petitioners did *not* prepare the schemes in contemplation of obtaining permits and constructing the buildings. Rather, the schemes were prepared so that Gramor could determine the feasibility of the projects and to attract prospective tenants. We conclude that the board incorrectly interpreted the meaning of the term "practice of architecture" to encompass activities not undertaken to facilitate the actual "erection, enlargement, or alteration" of any building. Thus, we reverse for legal error the board's determination that petitioners violated ORS 671.020(1) and (4) for producing feasibility studies on the 172nd, Progress Ridge II, and Sherwood projects.

In their third, fourth, and fifth assignments of error, petitioners argue that the board erred in determining that they had violated ORS 671.020(1) and (4), and OAR 806-010-0037(7), for assuming the title of architect or advertising their services in a manner tending to indicate that they were practicing architecture in Oregon. The board found Twist in violation of the statute and rule for displaying its logotype or business name, which contained the words "architecture" and "design," on the feasibility studies and on invoices for

the three projects, and for including photographs of two Oregon architectural projects on the company's website.[7] Furthermore, as to Callison and Hansen, the board determined that they violated the statute and rule by representing on Twist's website that they were "Licensed in the State of Oregon (Pending)." Again, we review the board's order for legal error and substantial reason. ORS 183.482(8)(a); *Topaz*, 255 Or App at 144; *Ross*, 294 Or at 370.

The relevant portion of ORS 671.020(1) provides that an unlicensed individual may not "assume or use the title of 'Architect' or any title, sign, cards or device indicating, or tending to indicate, that the person is practicing architecture or is an architect or represent in any manner that the person is an architect." The relevant portion of ORS 671.020(4) provides that an unlicensed individual may not "assume the title of 'Architect,' 'Consulting Architect' or 'Foreign Architect,' or use in connection with the business of the person any words, letters or figures indicating the title of 'Architect,' 'Consulting Architect' or 'Foreign Architect.'" Similarly, OAR 806-010-0037(7) provides, "Except as provided in this rule, no title, sign, cards, or device may be used to indicate or tend to indicate that the person or firm or business using the title is practicing architecture or is an architect, or represents in any manner that the person or firm or business is an architect or architectural practice."

Petitioners contend that the board erred in concluding that Twist had violated the statute and rule by using its logo on the feasibility studies because the board's decision was based on the erroneous conclusion that the work performed on those studies constituted the practice of architecture.[8] However, the record does not support petitioners'

---

[7] The logotype typically displayed the word "Twist" in a large font with the term "Architecture•Design" in a smaller font below "Twist." Sometimes the words are capitalized. In some cases, "TWIST ARCHITECTURE & DESIGN" is displayed. In other cases, the logotype is displayed below a stylized "T" symbol.

[8] Petitioners do not advance an argument that the board erred in concluding that Twist had violated ORS 671.020(4) because Twist's logo did not use the precise title "Architect," "Consulting Architect," or "Foreign Architect." We therefore decline to evaluate whether use of Twist's logo violated that subsection, and instead focus on the board's conclusion that petitioners had violated ORS 671.020(1) and OAR 806-010-0037(7) for using a title indicating or tending to indicate that Twist was practicing architecture.

contention that the board relied on that conclusion in making its determination. Rather, the board concluded that use of the term "architecture" in Twist's logo was a "title indicating or tending to indicate that the firm is practicing architecture" or is an "architectural practice." The board did not conclude that use of the logo violated the statutes because it was utilized in the context of architectural work.

Petitioners also challenge the board's conclusion that use of Twist's logo, which contained the word "architecture," indicated or tended to indicate that Twist was an architectural firm so that the logo use violated ORS 671.020(1) and OAR 860-010-0037(7). Although we agree with the board that the use of the logo indicated that Twist was an architectural firm, we disagree that such a use was sufficient to constitute a violation of the statute and rule.

ORS 671.020, the statute proscribing the unlicensed practice of architecture and the use of the title "architect" or any representation indicating the practice of architecture, relates solely to the unlicensed practice of architecture in the State of Oregon. Similarly, the rule governs only those unlicensed in Oregon; OAR 806-010-0037(1) provides that only "[t]hose individuals who have been notified by the Board that they have qualified as an Oregon architect and hold an active Oregon registration" may use the title "Architect." In reviewing the text and context of those provisions, we conclude that, in order for the board to find a violation of the statute or rule, it must determine that an individual is representing that he is an Oregon architect, or that he is engaged in the practice of architecture in Oregon. *See Gaines*, 346 Or at 171-72; *PGE*, 317 Or at 610-12.

Here, the board determined that use of the logo indicated or tended to indicate that Twist was practicing architecture. Twist was a lawfully registered architectural firm in the State of Washington. Twist's logo, which included the words "architecture" and "design," was an accurate reflection of the two functions it provided. The board's finding that Twist indicated it was practicing architecture fails to supply a rational connection to its legal conclusion that Twist was practicing architecture in the State of Oregon, as opposed to performing nonarchitectural design work in

Oregon. We therefore conclude that that part of the board's order lacks substantial reason and reverse and remand for reconsideration.

Likewise, the board's conclusion that Callison and Hansen had violated the statute and rule by including the phrase "Licensed in the State of Oregon (Pending)" on their website biographies is not supported by substantial reason. The statement that Callison and Hansen had pending Oregon licenses did not indicate, or tend to indicate, that they were Oregon architects or practicing architecture in Oregon. We are unpersuaded by the board's reasoning that the term "pending" indicated that licensure was imminent, and that the statement would indicate that Callison and Hansen, who had yet to submit applications for licensure, were practicing architecture in Oregon. The first dictionary definition of the adjective "pending" is "not yet decided : in continuance : in suspense." *Webster's* at 1669. The second dictionary definition of the adjective "pending" is "impending : imminent." *Id.* Under either definition, "pending" signifies that an objective has not yet been accomplished, regardless of how quickly it might be accomplished in the future. That is, their statement that licensure was pending was not akin to a statement that they were *presently* licensed to practice architecture in Oregon. The board's finding that Callison and Hansen stated that they were not currently licensed does not supply a rational connection to the board's legal conclusion that they were practicing architecture in Oregon. Accordingly, the board's legal conclusion that Callison and Hansen had violated the statute and rule by including that statement in their website biographies lacks substantial reason.[9] Therefore, we reverse and remand that part of the order for reconsideration.

However, we affirm the board's determination that Twist violated the statute and rule for referencing two Oregon projects, the Progress Ridge Town Center, and the

---

[9] Petitioners also challenge the board's conclusion regarding their use of the phrase "Licensed in the State of Oregon (Pending)" on the basis that ORS 671.020(1) impermissibly regulates speech in violation of Article I, section 8, of the Oregon Constitution, and the First Amendment to the United States Constitution. Because we reverse the board's determination on other grounds, we decline to review petitioner's constitutional challenges.

Sherwood Town Center, on its website. The website featured a photograph of the Progress Ridge Town Center, an Oregon project in which Hansen had been involved during his previous employment as a designer with an Oregon architectural firm. The website also featured one of the schemes from the Sherwood project that Twist performed for Gramor. Written beneath each of the images was the phrase "architectural design." We conclude that the inclusion of the phrase "architectural design" below both projects supports the board's determination that Twist indicated that it was involved in the practice of architecture on both Oregon projects. Petitioners concede that the phrase "architectural design" was an inaccurate description of the services provided on both projects, and note that the statements were immediately removed when brought to Twist's attention. Thus, we agree with the board that reference to those projects on Twist's website violated the statute and rule.

Our disposition obviates the need to address petitioners' claim that the board abused its discretion in imposing a $10,000 civil penalty against each petitioner.

Reversed and remanded.

# APPENDIX

Board of Architect Examiners
Case No. 10-035
BOAE000050

Exhibit A - 3  Page 9 of 1