No. 30 June 2, 2017 507

IN THE SUPREME COURT OF THE
STATE OF OREGON

TWIST ARCHITECTURE & DESIGN, INC.;
David Hansen; and Kirk Callison,
*Respondents on Review,*

*v.*

OREGON BOARD OF ARCHITECT EXAMINERS,
*Petitioner on Review.*

(BAE No. 10035; CA A152929; SC S064048)

On review from the Court of Appeals.*

Argued and submitted January 10, 2017.

Susan Yorke, Assistant Attorney General, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Anastasia P. Boden, Pacific Legal Foundation, Sacramento, California, argued the cause for respondent on review David Hansen. John M. Groen filed the brief.

J. Kevin Shuba, Garrett Hemann Robertson P.C., Salem, argued the cause and filed the brief for respondents on review Twist Architecture & Design, Inc., and Kirk Callison.

Nadia H. Dahab, Stoll Stoll Berne Lokting & Schlachter PC, Portland, filed the brief for *amicus curiae* National Council of Architectural Registration Boards. Also on the brief were Steven C. Berman, Stoll Stoll Berne Lokting & Schlachter PC, and Ronald M. Jacobs, Venable LLP, Washington, DC.

Before Balmer, Chief Justice, and Kistler, Walters, Landau, Brewer, Nakamoto, and Flynn, Justices.**

_____

   *  On judicial review from a Final Order of the Oregon Board of Architectural Examiners dated October 31, 2012. 276 Or App 557, 369 P3d 409 (2016).

   **  Baldwin, J., retired March 31, 2017, and did not participate in the decision of this case.

WALTERS, J.

The decision of the Court of Appeals is affirmed in part and reversed in part. The order of the Board of Architect Examiners is affirmed.

**WALTERS, J.**

The Oregon Board of Architect Examiners (board) seeks review of a decision of the Court of Appeals that reversed in part the board's determination that respondents (the Washington firm Twist Architecture & Design, Inc., and its principals, Callison and Hansen), engaged in the unlawful practice of architecture and unlawfully represented themselves as architects. ORS 671.020(1).[1] The board urges this court to conclude that respondents, who were not licensed to practice architecture in Oregon, engaged in the "practice of architecture" when they prepared master plans depicting the size, shape, and placement of buildings on specific properties in conformance with applicable laws and regulations for a client that was contemplating the construction of commercial projects. The board further urges that respondents' use of the term "architecture" in the logo on those master plans and the phrase "Licensed in the State of Oregon (pending)" on their website violated the law prohibiting unlicensed individuals from representing themselves as architects or indicating that they are practicing architecture. For the reasons that follow, we agree with the board. Accordingly, we reverse in part the decision of the Court of Appeals, *Twist Architecture v. Board of Architect Examiners*, 276 Or App 557, 563, 369 P3d 409 (2016), and affirm the board's order.

## I.   FACTS AND PROCEDURAL POSTURE

We take the facts, which are supported by substantial evidence in the record, from the board's final order.

---

[1]  ORS 671.020(1) provides:

"In order to safeguard health, safety and welfare and to eliminate unnecessary loss and waste in this state, a person may not engage in the practice of architecture or assume or use the title of 'Architect' or any title, sign, cards or device indicating, or tending to indicate, that the person is practicing architecture or is an architect or represent in any manner that the person is an architect, without first qualifying before the State Board of Architect Examiners and obtaining a certificate of registration as provided by ORS 671.010 to 671.220."

ORS 671.010(6) defines the "practice of architecture" as "the planning, designing or supervising of the erection, enlargement or alteration of any building or any appurtenance thereto other than exempted buildings." That definition was altered in 2013, substituting the word "observing" for "supervising." Or Laws 2013, ch 96, § 1. The same language was altered in other parts of ORS chapter 671 as well. All references in this opinion are to the 2011 version of the statutes.

Callison and Hansen formed Twist Architecture & Design, Inc. (Twist) in October 2008, in the state of Washington. Callison is licensed as an architect in Washington; Hansen is not licensed as an architect in any state. At the times of the violations alleged here, neither Callison nor Hansen was licensed to practice architecture in Oregon, and neither had applied for licensure.

A.  *Design Projects*

1.  *The 172nd Avenue Project*

In October 2008, respondents sent a letter of agreement to Gramor Development, a real estate development company located in Oregon, for what was described as "concept master planning design services" for a shopping center on property located on 172nd Avenue in Beaverton, Oregon. The agreement was on letterhead entitled "Twist Architecture & Design," and listed Callison and Hansen as principals. It specified payment terms, and indicated that Twist would provide master planning for the property, initially to include locations of access points, potential building sizes, a development program, and statistics. It further specified that after receiving input from Gramor, Twist would provide a more detailed plan that would include street level perspectives, a final rendered site plan, and a computer-generated aerial perspective defining massing. In the following months, Twist provided Gramor with several sets of technical drawings of the property, entitled "schemes," that showed the precise shapes of buildings and their square footage, their locations on the property, locations of parking, parking ratios, and surrounding streets, all drawn to scale. The schemes contained a logo that showed the words, "Twist," "Architecture," and "Design." While preparing the schemes, Hansen corresponded with Gramor about the site, discussing topography, city code requirements, and the building sizes needed by various potential lessees. Services provided by both Callison and Hansen were billed to Gramor at hourly rates. The 172nd Avenue project ultimately was not constructed due to a downturn in the economy.

2.  *The Progress Ridge Project*

At about the same time, respondents entered into a letter of agreement with Gramor to provide master planning

for a shopping center known as Phase 2 of the Progress Ridge Project, also located in Beaverton, Oregon. That agreement indicated that Twist would prepare a series of master plans that initially would outline locations of access points to and from the property, potential building sites, development programs, and statistics. The agreement further provided that follow up plans would provide additional details, and that Twist would be available for refinements to the plan required for leasing. An exhibit attached to that agreement described the services being provided to Gramor as "architectural services." Again, Twist prepared several schemes containing a logo that showed the words, "Twist," "Architecture," and "Design," and that depicted the shapes and locations of buildings, indicated square footage for each building and for the site in total, as well as the number of parking spaces. The schemes contained street-level views of the buildings, showing features such as walls, awnings, and doors. While preparing the schemes, Hansen corresponded with Gramor about city code requirements, the potential need for a parking structure on the site, square footage, street frontage, parking ratios, turn lanes, and fire truck access. Services provided by Hansen were billed to Gramor at hourly rates. Gramor ultimately developed the Progress Ridge project on a smaller scale, and did not use the plans created by respondents.

   3.  *The Sherwood Project*

      Additionally, in approximately the same time frame, Twist undertook to prepare multiple schemes for another Gramor shopping center project, located in Sherwood, Oregon. Those schemes showed the shapes and locations of buildings and their square footage, parking spaces, and traffic lanes. Some of the drawings showed buildings rendered with shadowing or shading to differentiate between walls and roofs. Some were drawn to scale, while some were not. While preparing the schemes, Hansen corresponded with Gramor about the needs of specific tenants, and made requested modifications to the schemes at Gramor's request. Services provided by Callison and Hansen were billed to Gramor at hourly rates. Gramor ultimately did not develop this project due to the downturn in the economy.

The invoices sent to Gramor, as well as the master plans provided to Gramor for the projects, all contained the logo that showed the words, "Twist," "Architecture," and "Design."

B.  *Advertising*

Shortly after Twist was formed in 2008, it contracted with a company to prepare a website for "Twist Architecture & Design" that contained biographical information about Callison and Hansen, as well as information about Twist's architectural projects. Callison's page included the statement, "Licensed in the State of Oregon (pending)," and immediately to the left of this, listed the Sherwood project under "selected experience." At the time the website was created, Callison was licensed in Washington and intended to file a reciprocal application for licensure in the state of Oregon, but had not done so. Hansen's page likewise contained the statement "Licensed in the State of Oregon (pending)," and immediately to the left of this, listed "Progress Ridge Town Center (under construction)," and the Sherwood project. Hansen was not licensed to practice architecture in any jurisdiction.

C.  *Proceedings Below*

In May 2011, the board initiated this contested case proceeding, seeking to impose a civil penalty on respondents. The board alleged that respondents' conduct violated ORS 671.020(1).

An administrative law judge held a contested case hearing and issued a proposed order concluding that respondents did not violate ORS 671.020(1) in most of the alleged respects. The board disagreed. It issued an amended order concluding that, without a license to do so, respondents had engaged in the practice of architecture and had represented themselves as architects.[2]

---

[2] In addition to reaching a different conclusion than the administrative law judge, the board's amended order made both amended and new findings of fact. In particular, the board found that the Twist logo and billings included the word "architecture," that certain of its agreements with Gramor were for "architectural" services, and that its schemes depicted "buildings," as that term is defined in ORS 671.010(3).

In addressing whether respondents had engaged in the practice of architecture, the board focused on the fact that, as statutorily defined, the "practice of architecture" includes "planning" and "designing." The board discussed the role that master plans play in the development of commercial building projects and found that a master plan is created at the beginning of such a project to identify whether a particular site will support the proposed development. Master plans, the board found, are drawn to scale to demonstrate that the proposed project will fit within the site's boundaries. The board explained that, in Oregon, architects and engineers perform such site planning and that the design of master plans is tested on architectural licensing examinations. The board also found it significant that, in this case, respondents themselves had described their services as "architectural" services, both in their letter agreements with Gramor and in their internet advertising. The board concluded that, because respondents had created master plans for Gramor that included renderings of buildings and detailed data such as the dimensions and square footages of buildings, they had engaged in planning and designing in contemplation of the erection of those buildings and had therefore engaged in the practice of architecture. Because respondents were not licensed to do so in Oregon, the board concluded that they had violated ORS 671.020(1). More specifically, the board concluded that Twist and Hansen had violated ORS 671.020(1) in working on all three of the described Gramor projects and that Callison had violated ORS 671.020(1) in working on the 172nd Avenue and Sherwood projects.

The board also concluded that respondents had violated the statute by representing themselves as practicing architecture when they were not licensed to do so. The board relied on respondents' use of the term "architecture" in the firm's logo on the Gramor master plans and the information related on their website. In the latter respect, the board

---

The only amended factual finding that respondents challenge on review is the board's finding that the master plans depict "buildings" as that term is defined in ORS 671.010(3). In their response, respondents Callison and Twist ask this court to conduct *de novo* review of that finding. However, there are no factual disputes about the images in question. We address respondents' argument that the images at issue are not "buildings," *see* 361 Or at 519 n 6.

reasoned that respondents had indicated that they were practicing architecture by touting their work on the Gramor projects and that Callison and Hansen had unlawfully used the phrase "Licensed in the State of Oregon (pending)" in their website biographies.

Respondents sought judicial review and, in the Court of Appeals, contended that the master plans that they had prepared for Gramor, which they referred to as "feasibility studies," were never intended to be, nor could they be, used as a basis for construction. Accordingly, respondents argued, they had not engaged in the practice of architecture as a matter of law. Respondents also argued that they had not unlawfully represented themselves as presently engaged in the practice of architecture by using their logo on the Gramor master plans or in their website advertising.

In large part, the Court of Appeals agreed with respondents. It concluded that "(1) the board erred in determining that [respondents] engaged in the unlicensed practice of architecture because Twist's preparation of the feasibility studies did not constitute the 'practice of architecture,' (2) the board's determination that Twist violated the statute and rule for using its logo on those studies lacks substantial reason, and (3) the board's determination that Callison and Hansen violated the statute and rule for using the phrase 'Licensed in the State of Oregon (pending)' on their website biographies lacks substantial reason." 276 Or App at 572. The court concurred with the board in only one respect. It concluded that the board had correctly determined that respondents had violated ORS 671.020(1) by advertising the Gramor architectural projects on their website, when they were not licensed to practice architecture in Oregon. The court reversed and remanded to the board for further proceedings. *Id.*

The board sought review in this court. We allowed review to determine whether the board was correct in concluding that the "practice of architecture," as that term is defined in ORS 671.010(6), includes the preparation of master plans such as those that respondents prepared, and whether respondents violated ORS 671.020(1) in preparing

master plans for Gramor, in using its logo on those master plans, and in using the phrase "Licensed in the State of Oregon (pending)" on their website.

## II. ANALYSIS

This case requires us to determine the meaning of two statutes, ORS 671.020(1) and ORS 671.010(6).[3] Again, ORS 671.020(1) provides:

> "In order to safeguard health, safety and welfare and to eliminate unnecessary loss and waste in this state, a person may not engage in the practice of architecture or assume or use the title of 'Architect' or any title, sign, cards or device indicating, or tending to indicate, that the person is practicing architecture or is an architect or represent in any manner that the person is an architect, without first qualifying before the State Board of Architect Examiners and obtaining a certificate of registration as provided by ORS 671.010 to 671.220."

ORS 671.010(6) provides:

> "'Practice of architecture' means the planning, designing or supervising of the erection, enlargement or alteration of any building or of any appurtenance thereto other than exempted buildings."

---

[3] In its order, the board also concluded that respondents' conduct violated ORS 671.020(4) and OAR 806-010-0037(7).

ORS 671.020(4) provides:

> "A person may not practice or attempt to practice the profession of architecture, or assume the title of 'Architect,' 'Consulting Architect' or 'Foreign Architect,' or use in connection with the business of the person any words, letters or figures indicating the title of 'Architect,' 'Consulting Architect' or 'Foreign Architect,' without first complying with ORS 671.010 to 671.220."

OAR 806-010-0037(7) provides:

> "Except as provided in this rule, no title, sign, cards, or device may be used to indicate or tend to indicate that the person or firm or business using the title is practicing architecture or is an architect, or represents in any manner that the person or firm or business is an architect or architectural practice."

The provisions of ORS 671.020(1) and (4) are duplicative, at least insofar as the conduct at issue in the present case, and we do not understand the board or the parties to assert otherwise. Accordingly, we limit our statutory analysis to ORS 671.020(1). Similarly, no arguments are made that the administrative rule applies to any conduct at issue in this case that is not otherwise covered by the statute, so again, we have no need to consider that issue.

A.   *The Practice of Architecture—the Gramor Projects*

To determine whether the board's conclusion that respondents' work on the Gramor projects constitutes the practice of architecture, we apply the principles enunciated in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), and *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). Our primary task is to determine the meaning that the legislature most likely intended. *Gaines*, 346 Or at 171.

The board takes the position that respondents' work on the Gramor projects constituted "the practice of architecture" because it involved "planning" and "designing." The gist of respondents' position is that the statute qualifies those terms in a way that demonstrates that the practice of architecture does not encompass the preparation of master plans. In particular, respondents explain that ORS 671.010(6) requires that "planning" and "designing" be done in contemplation of erecting a building. Thus, they contend, the practice of architecture requires that the parties reasonably contemplate actual construction based on documents prepared by the putative architect, or, said another way, that the putative architect must have prepared drawings that are sufficiently detailed that they can be used in actual construction. Respondents argue that the type of preliminary work that they did here—planning to determine whether it is feasible to undertake a building project—does not constitute the practice of architecture. As explained below, we conclude that the statutory text, viewed in context, does not support respondents' proposed limitation.

The text on which respondents rely does indeed define the practice of architecture as "the planning, designing or supervising of the erection, enlargement or alteration of any building." ORS 671.010(6). A "building" is defined as "any structure consisting of foundations, floors, walls and roof, having footings, columns, posts, girders, beams, joists, rafters, bearing partitions, or a combination of any number of these parts." ORS 671.010(3). Given those definitions, we agree with respondents that the practice of architecture requires that the planning, design, or supervision be of a structure that the parties contemplate actually building. So,

for example, artwork depicting an imaginary building that nobody contemplates actually building would not constitute "planning" or "designing" of the erection of a "building" as those terms are used in ORS 671.010(6). Engaging in such artwork would not constitute the practice of architecture, regardless of whether it depicted a building's structural details such as foundations or joists.

That does not mean, however, that the practice of architecture depends on whether buildings are, in fact, erected. The legislature defined the practice of architecture to encompass "planning" and "designing," and those are preliminary activities that do not necessarily require that construction actually take place. Accordingly, respondents do not contend that the practice of architecture occurs only when planning comes to fruition; rather, they contend that, to engage in "planning" the erection of a "building" for purposes of ORS 671.010(6), a putative architect must prepare drawings that the parties contemplate will be used, and that can be used, in actual construction, even if that construction does not actually occur. Thus, the question in this case reduces to whether the master plans that respondents prepared involved sufficient "planning" of the erection of "buildings" to constitute the practice of architecture as that term is used in ORS 671.020.

ORS chapter 671 contains contextual clues that help us resolve that question. First, the legislature did not simply give us a definition of what practice of architecture *is*, it also told us what it *is not*. The legislature provided exemptions to the statute's licensing requirements for employees of architects, ORS 671.030(1); registered professional engineers and their employees,[4] ORS 671.030(1); and for other regulated professionals involved in the construction of buildings, ORS 671.030(2)(e), (f), and (g). The legislature exempted individuals who make drawings or specifications for most houses ("single family residential dwelling") and their auxiliary structures or farm buildings, ORS 671.030(2)(b); for small buildings, not exceeding a certain square footage and

---

[4] ORS 672.060, which governs the practice of engineering, exempts the practice of architecture from its provisions, and contains parallel language that essentially mimics ORS 671.030 concerning the making of "plans or specifications for, or supervising the erection, enlargement or alteration of, a building."

height, ORS 671.030(2)(c); and for the alteration or repair of buildings, so long as those alterations and repairs do not involve the "structural part" of the building, if other requirements are met, ORS 671.030(2)(d).

Thus, it appears that the main legislative focus was on those who plan and design larger buildings where a significant number of people might be expected to gather (such as, for example, multiple-family dwellings or shopping centers). Requiring licenses for activities that could affect the structural integrity of such buildings is consistent with the legislature's stated purpose to "safeguard health, safety, and welfare."[5] Consequently, we have no doubt that the preparation of drawings that could serve as the basis for actual construction constitute the practice of architecture. However, the legislature did not necessarily intend to limit the compass of ORS 671.020(1) to the preparation of such drawings. As we will explain, two additional legislative clues indicate that the legislature's purpose extended beyond the preparation of such detailed drawings.

First, in ORS 671.025 the legislature sets out the requirements that an architect must meet when preparing "drawings and specifications" submitted to obtain a building permit. But, as the board noted in its opinion in this case, the legislature did not limit the "practice of architecture" to the preparation of such "drawings and specifications," and it did not use those terms to describe the practice of architecture. If respondents were correct that the practice of architecture requires the preparation of drawings that could be used in actual construction, it seems that the legislature would have limited the activities it described to the preparation of such drawings, rather than including activities preliminary to their preparation.

---

[5] That has been the stated purpose of the statute since 1935, when the legislature amended ORS 671.020's predecessor statute to provide as follows:

"In order to safeguard life, health and property and, to eliminate unnecessary loss and waste in this state, it shall be unlawful for any person to practice the profession of architecture or to assume or use the title or architect, or any title, sign, card or device indicating, or tending to indicate, that such person is practicing architecture or is an architect, or to represent in any manner that he is an architect, without first qualifying before the board or obtaining a certificate of registration as provided by this act."

Or Laws 1935, ch 260, § 1.

Second, the legislature's purpose in requiring licensure was not limited to safeguarding health and safety. The legislature's stated intent also was to "eliminate unnecessary loss and waste." ORS 671.020(1). As the board's findings indicate, those who develop the large projects that are the focus of the statute invest a significant amount of time, effort, and money to determine where to build their projects, and, most pertinent to our inquiry here, whether specific properties can viably be used for the type of development that they envision. Master plans like the ones that respondents drew in this case are prepared for that purpose. They are drawn to scale and determine, among other things, the size, shape, and density of buildings needed; whether the land is suitable for those buildings; and whether parking, emergency access, and ingress and egress needs can be met. It is reasonable to conclude that the legislature contemplated that economic loss and waste could occur if individuals untrained in master planning undertook to perform those tasks for developers for remuneration but without the requisite skills, and therefore required that those who engage in such planning must be licensed as architects. We conclude that, under the circumstances presented here, the preparation of master plans such as those prepared by respondents constitutes the "practice of architecture" as that phrase is defined in ORS 671.010(6).

Here, respondents were paid to plan commercial shopping center buildings for a client who was contemplating the construction of the buildings shown in the plans. Respondents described their services as "architectural design" services and provided their client with master plans that showed details such as the precise size, shape, and placement of the buildings on a specific piece of property in conformance with applicable laws and regulations.[6] In that circumstance, we conclude that respondents "plann[ed]"

---

[6] We understand respondents Twist and Callison to assert that any rendering of a structure in master plans such as those prepared in this case is not a rendering of a "building" unless the individual rendering contains a requisite quota of structural components, *e.g.*, foundations, floors, walls, roof, footings, columns, etc. *See, e.g.*, ORS 671.010(3) (defining "building" as "any structure consisting of foundations, floors, walls and roof, having footings, columns, posts, girders, beams, joists, rafters, bearing partitions, or a combination of any number of these parts, with or without other parts or appurtenances thereto").

"buildings" for purposes of ORS 671.010(6), and thus engaged in the "practice of architecture" without licenses to do so in violation of ORS 671.020(1).

B.   *Representations on Plans and Website*

In addition to prohibiting the unlicensed practice of architecture, ORS 671.020(1) also prohibits one who is not licensed to practice architecture in Oregon from using "any title, sign, cards or device indicating or tending to indicate, that the person is practicing architecture." Because we have concluded that respondents' preparation of master plans for Gramor constituted the "practice of architecture" under ORS 671.020(1), respondents violated that statute when they used their logo on those plans. That logo included the words "Twist" and "Architecture," indicating that respondent Twist was practicing architecture in the preparation of the plans on which the logo was used.

The remaining question is whether Callison or Hansen also violated ORS 671.020(1) when they described themselves on their website as "Licensed in the State of Oregon (pending)." As noted, those statements were made in conjunction with information about Oregon architectural projects undertaken by Twist. The Court of Appeals reasoned that that statement was "not akin to a statement that they were *presently licensed* to practice architecture in Oregon," 276 Or App at 571 (emphasis in original), and that that statement did not indicate or tend to indicate that respondents were Oregon architects or practicing architecture in Oregon and was not supported by substantial reason, *id.*

One problem with that analysis, however, is that the statutory prohibition is not against falsely claiming to be *licensed* to practice architecture. Rather, it is against

---

We find no textual basis in the statutes for such a conclusion. Although the "design" or "plan" in question must be for a structure that, if built, would meet the criteria listed in ORS 671.010(3), nothing in the statute suggests that each or every rendering of the structure must do so. There is no dispute here that the structures contemplated by the plans, if constructed, would qualify as "buildings" under the definition found in ORS 671.010(3). That is, respondents do not contend that they were designing some sort of open-air structures that, when built, would lack the structural components of a "building." We thus reject respondents' contentions that the plans at issue were not for "buildings."

using a "device" (the website) "indicating, or tending to indicate, that the person is *practicing architecture*" in Oregon, if the person lacks the required credentials. (Emphasis added.) Thus, a representation can violate the statute even if it does not address licensure status at all; it need only to indicate, or tend to indicate, that the person is practicing architecture in Oregon. Such a representation violates the statute, unless the person has satisfied the provisions of ORS 671.010 through 671.220. Thus, the Court of Appeals erroneously focused on whether the representations on the website indicated that respondents were presently *licensed* to practice architecture in Oregon. 276 Or App at 571. The appropriate question is whether the representations indicated or tended to indicate that Callison and Hansen were *practicing* architecture in Oregon.

In the circumstances presented here, we conclude that they did. Under ORS 671.065(2), in some circumstances, a person "may offer to render architectural services [in Oregon] without being issued a certificate of registration by the Board, if the architect advises the prospective client and the Board in writing and submits an application for registration in this state." In light of that provision, an Oregon consumer of architectural services who sees representations by principals of an architectural firm indicating that their licensure in Oregon is "pending," and sees that information presented in conjunction with details about architectural projects that the firm has undertaken in Oregon, would have reason to conclude that principals are lawfully providing architectural services in Oregon. When the principals have not submitted an application for registration in Oregon, they are not qualified to practice architecture in Oregon and, therefore, when they make claims of pending licensure in conjunction with advertising architectural projects that they have undertaken in Oregon, they violate ORS 671.020(1).

## C.   *Constitutional Concerns*

Finally, we turn briefly to several constitutional considerations raised by respondents. In his response brief, Hansen asserts that the board's interpretation of ORS 671.020, as applied to his master planning activities for

Gramor and his representations on the Twist website, raise due process concerns under the Fourteenth Amendment to the United States Constitution. He argues that the board's interpretation of the statute runs afoul of his constitutional right to earn a living without unreasonable government interference, citing *Greene v. McElroy*, 360 US 474, 79 S Ct 1400, 3 L Ed 2d 1377 (1959), and *Schware v. Board of Bar Examiners*, 353 US 232, 77 S Ct 752, 1 L Ed 2d 796 (1957). Those cases stand for the unremarkable proposition that state licensure requirements for professions will be struck down if they lack any rational connection to the person's fitness to actually practice the profession. To the extent that Hansen suggests that master planning such as that done for Gramor in this case is not related to the practice of architecture, the record belies that argument; expert testimony was presented that master planning is, in fact, taught as part of an architect's education and tested on licensure examinations, and is an integral part of the process of building design. We disagree that ORS 671.020's prohibition on unlicensed practice of architecture lacks a rational basis. As described above, the purposes of the statute are "to safeguard life, health and property and to eliminate unnecessary loss and waste." ORS 671.020(1). The state's interest in ensuring that those who plan and design buildings have the requisite knowledge and training to ensure the buildings' viability and structural integrity is rationally related to the stated goals of the statute. Moreover, as discussed above, the numerous exemptions found in ORS 671.030 ensure that the statute is not interpreted in an overly broad manner to apply to activities in which the state has little or no rational interest.

In addition, all three respondents also make rather generic arguments that the board's interpretation of ORS 671.020 raises free speech concerns. They cite no authority for their position, and we are aware of none. It is true that false statements may be protected to some extent by the First Amendment to the United States Constitution. *See United States v. Alvarez*, 567 US 709, 132 S Ct 2537, 183 L Ed 2d 574 (2012) (false statements may be protected, unless they involve defamation, fraud, or some other legally cognizable harm associated with the false statement). False or

deceptive commercial speech, however, is a different matter. *See, e.g.*, *Friedman v. Rogers*, 440 US 1, 99 S Ct 887, 59 L Ed 2d 100 (1976) (state may prohibit deceptive commercial speech). As we explained above, the false statements about pending licensure on respondents' website, when viewed in conjunction with information on the website about architectural projects in Oregon, could mislead Oregon consumers into believing that respondents were authorized to practice architecture in Oregon. We reject without further discussion respondents' contentions that such speech was constitutionally protected.

The decision of the Court of Appeals is affirmed in part and reversed in part. The order of the Board of Architect Examiners is affirmed.